UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

PATRICK MATTETE, #A#-96451506,

                Petitioner,

v.                                      2:06CV652

MARY F. LOISELLE, Field Office
Director for Detention and
Removal Operations, Immigration
and Customs Enforcement (ICE),

                Respondent.


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

      This matter was initiated by petition for writ of habeas corpus under 28 U.S.C. § 2241. The matter was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia.

### I. STATEMENT OF THE CASE

      Petitioner, a native and citizen of Tanzania, is currently being held in custody by Immigration and Customs Enforcement (ICE), pending removal from the United States. Petitioner was admitted into the United States on July 15, 1998, on a B-1 student visa, with permission to remain in the country until August 14, 1998. Petitioner remained in the United States after this date, despite unsuccessful efforts to obtain a legal resident status.

      On March 29, 2004, in the Superior Court of the District of Columbia petitioner was convicted of sexual abuse against a minor, and assault against a minor. Petitioner failed to appear as ordered, and an additional charge for bail violation was also added. Petitioner was

sentenced to 180 days in jail.  Upon release, petitioner was taken into custody by ICE to begin deportation proceedings.

On August 27, 2004, petitioner applied for asylum, withholding of removal, and relief under the Convention Against Torture.  On September 20, 2004, an immigration judge ordered petitioner deported to Kenya, where he alleged he was born, or in the alternative, Tanzania. Petitioner appealed to the Board of Immigration Appeals, which affirmed the ruling on March 2, 2005.  Petitioner then appealed to the United States Court of Appeals for the Fourth Circuit, which affirmed the decision in January, 2007.

There are conflicting accounts as to petitioner's cooperation with the ICE during the period that followed.  On April 5, 2007, the Kenyan Consular Office notified respondent that petitioner would not be accepted into their country.  Respondent then began proceedings to remove petitioner to Tanzania.

On November 27, 2006, petitioner filed a petition for a writ of habeas corpus in this Court, and on May 18, 2007, respondent filed an answer.  This matter is now ripe for consideration.

### B. Issue

The petitioner alleges the following grounds:

1.   The length of time that petitioner has remained in custody is unlawful; and

2.   The lack of an administrative mechanism in place to allow petitioner to challenge the length of his detention is a violation of due process.

## II.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

### B.   Petitioner has Failed to Demonstrate That There is no Significant Likelihood That he will be Removed to Tanzania in the Reasonably Foreseeable Future.

When an alien is ordered removed, the "Attorney General shall remove the alien from the United States within a period of ninety (90) days." 8 U.S.C. § 1231(a)(1)(A). Moreover, during the removal period, the alien "shall" be detained in custody. 8 U.S.C. § 1231(a)(2). If an alien has reentered the United States illegally after having been removed under an order of removal, the prior order of removal is reinstated and the alien is not eligible and may not apply for any relief under the immigration laws. 8 U.S.C. § 1231(a)(5). However, certain categories of aliens who have been ordered removed may be detained beyond the removal period, "namely inadmissible aliens, criminal aliens, aliens who have violated their non-immigrant status conditions, and aliens removable for certain national security or foreign relations reasons . . . ." Zadvydas v. Davis, 533 U.S. 678, 688 (2001). Furthermore, if the Attorney General finds that an alien ordered removed is a "risk to the community or unlikely to comply with the order of removal, [the alien] may be detained beyond the removal period." 8 U.S.C. § 1231(a)(6).

In Zadvydas, the Supreme Court, interpreting § 1231(a)(6), held that the Attorney General's discretion to hold an alien beyond the removal period is not unlimited. Zadvydas, at 688. Rather, the Supreme Court held that "the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States . . . It does not permit indefinite detention." Id. at 688. As the Supreme Court explained, "while 'may' suggests discretion, it does not necessarily suggest unlimited discretion." Zadvydas, at 696.

Addressing the constitutionality of detaining an alien pending removal beyond the ninety day removal period, the Supreme Court opined

that a six month period of detention is presumably reasonable.  However, the six month presumption, "of course, does not mean that every alien not removed must be released after six months . . . To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id. at 701.  However, "if removal is reasonably foreseeable, the habeas court should consider the risk of the alien's committing further crimes as a factor potentially justifying confinement within that reasonable removal period." Id. at 700.  Accordingly, the Supreme Court articulated an initial burden shifting scheme for determining when detention beyond the six month period remains reasonable.  As the Court explained, after the six month period, an alien seeking habeas relief must provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, at 701.  Once the alien meets his initial burden, "the government must respond with evidence sufficient to rebut that showing." Id. at 701.  If the government fails to rebut the alien's evidence, then the alien must be released, albeit on supervised release.

### 1. Petitioner's evidence

Petitioner claims that both the Kenyan and Tanzanian governments have refused to take him, and therefore, he will be detained for an indefinite period.  However, petitioner submits only the affidavits of his attorney, declaring that his attorney was present when the Tanzanian consulate advised another attorney that petitioner would not be issued travel documents because he is a citizen of Kenya.  The affidavit further states that petitioner's attorney called an official at the Kenyan consulate, who also stated that travel documents would not

4

be issued to petitioner because he is not a Kenyan citizen. (Pet. Reply to Resp't Ex. B.)  The evidence is insufficient.

First, the admissibility of the evidence is suspect, at least pertaining to the phone call from the Tanzanian officials.  Petitioner's counsel did not specify whether the call was a conference call or if he personally heard the consular.  If he did not hear the consular himself, the evidence would be heresy.  Counsel has not procured an affidavit from the official, which could suggest that the official may be open to a change in opinion in the near future, or that the official was only speaking based on his familiarity with petitioner's case.  Furthermore, there is no indication that the consular was the decision-maker in petitioner's case.  Without such documentation, the information regarding the phone call, even if admissible, is mere opinion.  Respondent has not confirmed petitioner's statement, therefore, the evidence is not conclusive.

Additionally, even if the evidence was solid, it would prove only that the consulates have thus far declined to issue travel documents to petitioner.  In <u>Zadvydas</u>, the government expressly told the United States that it would not accept the petitioner within its borders.  533 U.S. at 684.  While refusal to provide travel documents is certainly a lack of advance consent, it is not an explicit rejection.  <u>Jama v. ICE</u>, 543 U.S. 335, 345 (2205).  Even though a nation has not granted travel documents to a petitioner, or has refused to grant travel documents, does not prove that a petitioner has no reasonable likelihood of being removed.

Respondent's evidence, in the form of an affidavit from ICE, does not conclusively establish that petitioner will be removed in a reasonable period.  The ICE agent in charge of petitioner's case stated that she contacted the Tanzanian consulate requesting travel documents

for petitioner, but the consulate has not yet responded. (Resp't Ex 26.) However, given petitioner's evidence, respondent need not provide any supporting evidence above what has been presented.  A respondent must provide rebuttal evidence if a petitioner can make a prima facie showing that: (1) he has been in confinement for over six months, and (2) there is no significant likelihood that he will be removed in the reasonably foreseeable future.  Zadvydas, 533 U.S. at 701.  While petitioner has shown that he has been confined for over six months, the evidence fails to demonstrate conclusively that he will not be removed in the future.

## 2.  Petitioner has caused the delay.

The Fourth Circuit court has ruled that a petitioner must not only show that there is no significant likelihood of removal in the foreseeable future but that the lack of such likelihood comes about through no fault of his own.  Olajide v. BICE, 402 F.Supp.2d 688, 693 (E.D. Va. 2005).  In Olajide, the petitioner refused to return to his country of origin until he received dental surgery.  When the government provided a surgeon, the petitioner refused treatment and demanded a particular dentist who lacked the expertise to perform the surgery.  Id. The court found that the petitioner was trying to exploit Zadvydas by frustrating his own removal and then complaining that the delay warranted his release.  The court ruled that a petitioner cannot claim that his preremoval detention is unreasonably long when he is the cause for the delay of his removal.  Id. at 689.

In the case at bar, the evidence indicates that for almost the entire length of his confinement, petitioner refused to fill out the application for travel documents, refused to provide fingerprints and photos, refused to participate in telephone interviews with the Tanzanian consular, and gave false information regarding the person to contact to obtain his Kenyan birth certificate.  (Resp. Exs. 16, 22, 26.)  During

his time in custody, petitioner has been served with twelve notices for failure to comply. Each of the notices stated that failure to comply was grounds for extension of the detention period pursuant to 8 U.S.C. § 241(a)(1)(c), of the Immigration and Nationality Act and could eventually result in criminal prosecution. Nonetheless, petitioner disregarded the warnings.

Petitioner attempts to justify his actions by claiming that he refused to participate in his removal proceedings because he believed that his appeal in the Fourth Circuit would be abandoned if he departed the United States. This excuse is without any merit. The record indicates that petitioner was advised by his attorney that there was no order staying his removal while his appeal was pending, and therefore, he must cooperate with ICE. (Resp't Ex. 15.) Petitioner did not heed the advice but continued to refuse compliance, based on his own erroneous belief. Even if petitioner is given the benefit of the doubt that his beliefs were in good-faith, it is without consequence. A petitioner cannot simply refuse to comply with ICE based on his beliefs, particularly when he has been advised by counsel to do otherwise. In any event, the excuse only applies to petitioner's noncompliance up to January 11, 2007. Petitioner's only attempt to justify noncompliance past that date is his affidavit stating that he has complied. However, petitioner's affidavit has been contradicted by respondent's documents indicating that petitioner provided them with false information and refused a telephone interview under the erroneous belief that respondent was obligated to drive him to the interview. (Resp. Ex. 23.) Petitioner also argues that respondent failed to provide suitable evidence to substantiate some of its claims. However, respondent need not substantiate since petitioner has conceded that he first provided fingerprints and signed documents on January 11, 2007, and first provided

complete biographical information on March 29, 2007. Petitioner does not allege, nor does respondent admit, that the information was provided before those dates. Yet, petitioner was in custody for over two years prior to those date. It is unreasonable to expect respondent to have been able to remove petitioner without this vital information. Therefore, petitioner's admission of the facts supports the contention that he did not comply until recently. Respondent cannot be expected to accommodate petitioner at a moment's notice once petitioner decides to cooperate. The claim is without merit and should be DISMISSED.

   **3.** **Petitioner is a danger to the community and risk of flight.**

      It should be noted that even had petitioner demonstrated that he would not be removed in the reasonably foreseeable future, he must still be denied the relief he seeks. Petitioner's criminal record supports respondent's contention that petitioner is both a danger to the community and a flight risk.

      The precipitating event that brought about petitioner's removal proceedings was his arrest and convictions for sexual abuse against a minor and assault upon a minor. (Resp. Ex. 3.) While the offenses may have only warranted 180 days in jail, they are far from "victimless crimes." There was a victim, and the victim was a minor. Zadvydas, the case that petitioner seeks to use to his favor in obtaining relief, favorably references a holding that individuals with past sexually violent behavior may be subject to indefinite civil confinement on the grounds that "previous instances of violent behavior are an important indicator of future violent tendencies." Zadvydas, 533 U.S. at 691 (citing Kansas v. Hendricks, 521 U.S. 346, 357-58 (1997)). Therefore, it would be permissible under Zadvydas for respondent to keep petitioner in detention as long as he is assessed to be a threat to the community.

Petitioner was also convicted of failing to appear to face charges after being released on bail.  (Resp. Ex. 3.)  The conviction is a clear indication that petitioner has in the past had no hesitation in taking action to avoid being brought to accountability.  In addition, petitioner's pursuit of every available legal avenue to remain in the United States, taken to the point of noncompliance with the removal process, supports respondent's contention that petitioner would not comply with a deportation order unless he is in custody.  The Supreme Court has held that the risk of flight is rendered irrelevant if there is only a remote possibility of removal.  <u>Zadvydas</u>, 533 U.S. at 690.  However, petitioner has failed to demonstrate that there is only a remote possibility of removal.  Consequently, respondent has adequate grounds to hold petitioner in detention.  The claim is without merit and should be DISMISSED.

### D.  Petitioner's Claim that Lack of Administrative Remedy is a Violation of Due Process is Without Merit.

Petitioner alleges that he has been denied due process because there are no administrative remedies available to him.  There is no constitutional right to have an agency review.  By contrast, Article III of the Constitution provides for the settlement of cases and controversies to take place before the Judicial Branch.  U.S. CONST. art. III, § 1.  Some agencies may be empowered to conduct reviews of cases and provide remedies, and where applicable, individuals must exhaust those remedies before bringing a case before the federal judiciary.  <u>Polera v. Bd. of Edu. of Newburgh Enlarged City Sch. Dist.</u>, 288 F.3d 478, 482-83 (2d Cir. 2002).  However, this does not mean that all agencies must have a review process.  Petitioner has demonstrated the futility of the claim by raising it in this Court.  If he wishes to challenge the length, lawfulness, or any other aspect of his detention, he may bring his

grievance before the federal court in the form of a petition for a writ of habeas corpus, as he is doing now.  The Court will not rule that his detention is unlawful because he has been denied an additional forum to voice his concern.  Rather, petitioner has been provided with a forum (this Court) and has argued his claims herein.  Petitioner is not entitled to an additional forum just because this Court does not find his claims to be meritorious.  The claim is without merit and should be DISMISSED.

### III.  RECOMMENDATION

For the foregoing reasons, the Court recommends that petitioner's petition for writ of habeas corpus be DENIED.  Petitioner has failed to demonstrate "a substantial showing of the denial of a constitutional right."  Therefore, it is recommended that the Court decline to issue any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure.  See Miller-El v. Cockrell, 123 S.Ct. 1029, 1039 (2003).

### IV.  REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within ten days from the date of mailing of this report to the objecting party, computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three days permitted by Rule 6(e) of said rules.  See 28 U.S.C. § 636(b)(1)(C)(2000); FED.R.CIV.P. 72(b).  A party may respond to another party's objections within ten days after being served with a copy thereof.

2. A district judge shall make a <u>de novo</u> determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations.  <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).


                                        _____/s/_____
                                        James E. Bradberry
                                        United States Magistrate Judge

Norfolk, Virginia

_____July 11_____, 2007

<u>Clerk's Mailing Certificate</u>

A copy of the foregoing Report was mailed this date to each of the following:

    Alexandru I. Craciunescu
    The International Business Law Firm P.C.
    1915 Eye Street N.W., Ste. 500
    Washington, DC 20006-2118


    Virginia Van Valkenburg, Esq.
    Assistant Attorney General of Virginia
    900 E. Main Street
    Richmond, VA  23219


                        Fernando Galindo, Clerk


                        By _____
                                Deputy Clerk

                        _____, 2007